```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


GARY NEAL SADLER,               :
       Plaintiff,               :
                                :
     v.                         :    Case No. 3:10-cv-11 (AWT)
                                :
MARK STRANGE, and               :
PETER MURPHY,                   :
       Defendants.              :
```

**RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND THE PLAINTIFF'S MOTION TO AMEND RELIEF**

The plaintiff, Gary Neal Sadler ("Sadler"), commenced this action *pro se* against defendants Deputy Commissioner of Operations Mark Strange and Warden Peter Murphy.[1] Sadler seeks injunctive relief from the defendants in their official capacities. The defendants have filed a motion for summary judgment, and the plaintiff has filed a motion to amend his request for relief. For the reasons that follow, the defendants' motion for summary judgment is being granted in part and the plaintiff's motion to amend is being denied as moot.

I. **Legal Standard**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a

---

[1] The plaintiff attempted to file the complaint as a class action. The court noted that the plaintiff cannot bring a class action lawsuit *pro se* and denied certification. *See* Doc. No. 4.

matter of law.  *See* Rule 56(a), Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

   When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  *Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  However, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury

could reasonably find for the [plaintiff].'" *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson*, 477 U.S. at 252)).

## II. **Facts**

On August 18, 2009, defendant Strange issued a order informing the prisoners at MacDougall Correctional Institution that the policy that inmates cannot block cell windows or obstruct the view into the cell in any way would be enforced. Prior to the issuance of the order, some inmates, including the plaintiff, had blocked a portion of the cell door window and/or fashioned a shield with a sheet or towel when dressing or attending to private bodily functions.

Male and female correctional officers have the same job descriptions.[2]  Both male and female correctional officers tour the housing units as part of their jobs and look into the cells.

Obstructing the view into a cell is a disciplinary infraction.  To date, the plaintiff has not received any disciplinary reports for violating this policy.

## III. **Discussion**

The plaintiff contends that the newly enforced policy

---

[2] The plaintiff disputes this fact but does not provide copies of the job descriptions to support his assertion.  Rather he cites to directives providing that male correctional officers will conduct strip searches and monitor the taking of urine samples whenever possible.  The fact that the Department of Correction has made this accommodation to male inmates does not demonstrate that male and female correctional officers have different job descriptions.

violates his rights under the First, Fourth, Eighth and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000ee, as well as under state law. The defendants move for summary judgment on the ground that there are no genuine issues of material fact regarding the constitutionality of the correctional policy.

    A.    **First Amendment and RLUIPA**

The plaintiff argues that being viewed naked by male and female correctional staff violates his right to freely exercise his religion in violation of the First Amendment and RLUIPA.

In evaluating a claim of denial of the First Amendment right to free exercise of religion, the court must balance the plaintiff's constitutional right against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). The plaintiff bears the initial burden of establishing that the disputed conduct, being viewed naked by correctional staff, infringes on his sincerely held religious beliefs. The defendants then are required to identify "the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006).

4

In determining whether a prison regulation is reasonable, the court considers four factors: (1) whether there is a rational relationship between the regulation and the legitimate government interest asserted; (2) whether the prisoner has alternative means to exercise his right; (3) the impact of accommodating the right on the prison system; and (4) whether there are ready alternatives that would accommodate the prisoner's right and satisfy the government's interest. *See Benjamin*, 905 F.2d at 571 (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

The plaintiff states that his religious beliefs preclude him from being observed naked by correctional staff. The requirement that correctional staff have an unobstructed view into the cell at all times, even when the inmate is attending to private bodily functions, infringes on the plaintiff's belief. In response, the defendants assert concerns of safety and institutional security. The court focuses, therefore, on whether the policy at issue reasonably addresses the institutional concerns.

The first factor is whether there is a rational relationship between the policy in question and the state's interest in prison safety and security. The defendants argue that an unobstructed view of inmates at all times is essential to ensure safety at the correctional facility. Defendant Murphy avers that correctional staff must ensure that inmates are not fighting, attempting

suicide, or engaging in other conduct violating prison rules. The defendants refer the court to the assessment of a similar policy by the Seventh Circuit.

> Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. ... [M]onitoring of naked prisoners is not only permissible–wardens are entitled to take precautions against drugs and weapons (which can be passed through the alimentary canal or hidden in the rectal cavity and collected from a toilet bowl)–but also sometime mandatory.  Inter-prisoner violence is endemic, so constant vigilance without regard to the state of the prisoners' dress is essential.  Vigilance over showers, vigilance over cells–vigilance everywhere, which means that guards gaze upon naked inmates.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) (rejecting challenge to policy of allowing female guards to monitor prisoner movement and view prisoners naked in their cells, in the shower, and using the toilet), *cert. denied sub nom. Johnson v. Sheahan*, 519 U.S. 1006 (1996).

In response, the plaintiff refers the court to *Arey v. Robinson*, 819 F. Supp. 478 (D. Md. 1992), in which the district court considered a challenge to a redesign of a prison housing unit as an open dormitory with open bathroom facilities. Inmates using the facilities could be viewed from outside the bathroom. The court concluded that, absent any identified security problems with the prior design, the state failed to articulate any

interest warranting exposing the bathroom area to view by persons in the dormitory.  *See id.* at 487.  The plaintiff states that defendant Strange told him that the decision to enforce the existing policy was not the result of security incidents.  Thus, the plaintiff argues that the state has no security interest supporting the decision.

The plaintiff's reliance on *Arey* is misplaced.  This case does not involve any redesign of the housing unit and the defendants have articulated a safety and security interest that would be furthered by an unobstructed view into the cells.  The court concludes that the policy is rationally related to the state's interest.

The second factor is whether the plaintiff has alternative means to exercise his constitutional right.  In considering alternative means open to an inmate for exercising a right restricted by prison regulation, the Supreme Court has emphasized that the alternatives "need not be ideal ... they need only be available."  *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003).  The defendants argue that the plaintiff can use the toilet when correctional officers are not touring the housing unit.  They provide no information on the frequency of the tours.  In response, the plaintiff states that the tours are not announced or conducted at regular times, so he cannot determine a safe time to use the toilet.  In addition, he states that his medical

condition requires frequent toilet use and that the condition is exacerbated by waiting to use the toilet.  The plaintiff also notes that there are tables in the recreation yard near the other window in his cell and that inmates congregating at the tables have a clear view into his cell.  Based on the current record, the court cannot determine whether the plaintiff has an alternative means to exercise his constitutional right.

   The third factor is the impact on the prison system of accommodating the plaintiff's right.  The plaintiff objects to the possibility of being viewed naked by male and female correctional staff and other inmates.  The only way to accommodate the plaintiff's claimed right is to permit him to completely shield himself from all other persons whenever he deems necessary.  This practice would significantly impact prison administration as correctional staff would be unable to ascertain what was happening in the cell whenever the plaintiff deemed it necessary to use a shield.  Further, to the extent that the plaintiff's claim may be restricted to viewing by female correctional staff only, such a prohibition would require the Department of Correction to hire additional male officers to tour the housing units and restrict the duties of female staff.  The defendants contend that such staff restrictions could result in discrimination claims by female employees.

   The fourth and final factor is whether alternatives exist

that would accommodate the plaintiff's right and satisfy the state's interest.  This factor weighs against the regulation if the inmate "can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests."  *Turner*, 482 U.S. at 91.  Defendant Murphy states in his affidavit that there are no alternatives.  Substantial deference is owed to the professional judgment of Warden Murphy.  *See Beard v. Banks*, 548 U.S. 521, 528 (2006) ("courts owe substantial deference to the professional judgment of prison administrators" (internal quotation omitted)).  The plaintiff, however, has suggested alternatives, some of which the defendants have not addressed.  Based on the current record, the court cannot discern whether there are alternatives that would accommodate the state's needs and the plaintiff's religious belief.

Because the current record is insufficient for the court to evaluate the competing interests of the parties, the court cannot determine at this time whether strict enforcement of the policy is "reasonably related to legitimate penological interest" or an "exaggerated response."  *Turner*, 428 U.S. at 87.  Therefore, the defendants' motion for summary judgment is being denied on the First Amendment claims.

RLUIPA provides in relevant part that:

> No government shall impose a substantial
> burden on the religious exercise of a person

> residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  Although RLUIPA replaces the "legitimate penological interest" standard articulated in *Turner v. Safley* with a "compelling governmental interest" and "least restrictive means" test, 42 U.S.C. § 2000cc-1(a), RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety."  *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

Under RLUIPA, the plaintiff must present evidence demonstrating a prima facie claim that the challenged rule constitutes a substantial burden on the exercise of his religious beliefs.  If the plaintiff meets this burden, the state then must prove that any substantial burden on the exercise of the plaintiff's religious beliefs both furthers a compelling governmental interest and is the least restrictive means of doing so.  *See* 42 U.S.C. § 2000cc-2(b); *Bikur Cholim, Inc. v. Village*

*of Suffern*, 664 F. Supp. 2d 267, 275-76 (S.D.N.Y. 2009).

To establish a substantial burden on his exercise of religion, the plaintiff must show that "the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith.  The interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Pugh v. Goord*, 571 F. Supp. 2d 477, 504-05 (S.D.N.Y. 2008) (internal quotation marks and citations omitted).  The plaintiff provides his own declaration that he must not be viewed naked.  In opposition, the defendants have provided no evidence.  Thus, the court assumes, for purposes of deciding this motion, that the plaintiff has established a prima facie claim.

Institutional safety and security is a compelling government interest.  However, the defendants have not shown that strict enforcement of the policy is the least restrictive means of furthering that interest.  The plaintiff states that inmates are required to put their identification cards in the cell door window during counts and that the identification card and a "razor card" are placed in the cell door window when an inmate is issued a razor.  The defendants do not refute these statements.  Based on the current record and the unopposed statements that inmates are required to partially obstruct the cell door window

11

under certain circumstances, the court cannot conclude that strict enforcement of the policy is the least restrictive means of furthering the government interest. Thus, the defendants' motion for summary judgment is being denied as to the RLUIPA claim.

### B.   Eighth Amendment

The defendants' motion for summary judgment argues that plaintiff's Eighth Amendment claim is without merit under the *Turner* analysis considered above. However, the Second Circuit does not use the *Turner* analysis for assessing claims under the Eighth Amendment. Rather, under Second Circuit law,

> [t]o establish an Eighth Amendment violation, an inmate must show: (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities; and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety.

Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012)(internal quotation marks and brackets omitted). Because the defendants base their argument for summary judgment as to the plaintiffs' Eighth Amendment claim on an improper standard of law, they have failed to meet their burden of establishing that there are no genuine issues of material fact in dispute. Thus, the defendants' motion for summary judgment is being denied as to the Eighth Amendment claim.

C.  **Fourth Amendment**

The Supreme Court has held that inmates lack any Fourth Amendment privacy right that would protect them from searches of their cells. The Court noted that traditional Fourth Amendment notions of privacy are "fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."  *Hudson v. Palmer*, 468 U.S. 517, 527 (1984).  Thus, an inmate's Fourth Amendment right to privacy is minimal at best.

The Fourth Amendment has generally been interpreted to preclude cross-gender strip searches absent an emergency or exigent circumstances.  *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1143 (9th Cir. 2011) (citing cases).  This case, however, does not involve a cross-gender search.  The plaintiff alleges only that his Fourth Amendment rights are violated by being viewed naked and using toilet facilities by female correctional officers and employees.

Courts considering cross-gender viewing have found that "inadvertent, occasional, casual, and/or restricted observations of an inmate's naked body by a guard of the opposite sex did not violate the Fourth Amendment."  *Cookish v. Powell*, 945 F.2d 441, 447 (1st Cir. 1991); *see also Somers v. Thurman*, 109 F.3d 614, 620 (9th Cir. 1997) (concluding that occasional viewing of unclothed male prisoners by female correctional officers does not violate the Fourth Amendment right to privacy); *Miles v. Bell*,

13

621 F. Supp. 51, 67–68 (D. Conn. 1985) (explaining that courts have found a violation only in those cases in which guards "regularly watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities or showering" and finding no violation of inmates' right to privacy where male inmates did not show that female guards "regularly" saw them naked).

In the declaration filed with his complaint, the plaintiff states that he uses the toilet three times per day and that he has been observed by female staff thirty-six times. The declaration was signed on December 15, 2009, 118 days after the order was issued and the policy began to be enforced. According to the plaintiff's statement, he has been observed by female staff while using the toilet approximately once every ten uses. The defendants have provided no contrary evidence. Based on the current record, the court cannot determine whether the plaintiff was subjected to "regular" viewing by female correctional officers. In addition, although the defendants argue that any ogling is prohibited, the plaintiff avers that correctional staff frequently return to the window to watch him more closely. Thus, the defendants' motion for summary judgment is being denied as to the Fourth Amendment claims.

D.   **Fourteenth Amendment**

The plaintiff contends that the enforcement of the policy violates his Fourteenth Amendment rights to due process and equal

14

protection of the law.

The Fourteenth Amendment does not provide a right to bodily privacy.  Although the Fourteenth Amendment has been held to protect the fundamental implied rights of marriage, family procreation and bodily integrity, there is no fundamental implied right to avoid exposure to members of the opposite sex.  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (noting that when the Fourth Amendment provides an explicit right to privacy, court should not engage in substantive due process analysis).  Thus, there is no basis for the plaintiff's due process claim.

The plaintiff's equal protection claim appears to be based on his contention that the policy has been enforced selectively.  Some inmates have received disciplinary reports for obstructing the view into their cells while others have not.  The plaintiff concedes that he has not received any disciplinary charges for violating the policy.  As the plaintiff has not been penalized as a result of the decision to enforce the policy, the court can discern no basis for an equal protection claim.

Thus, the defendants' motion for summary judgment is being granted as to the Fourteenth Amendment due process and equal protection claims.

**IV.**   **Motion to Amend Request for Relief (Doc. No. 41)**

The plaintiff states that he no longer is confined at MacDougall Correctional Institution and asks to amend his request

for relief.  Instead of an order that the policy not be strictly enforced, the plaintiff asks the court to order that he not be returned to MacDougall Correctional Institution and award him the costs of litigation.

The Second Circuit has held that an inmate's request for declaratory and injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution.  *See Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976).  *See also Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed").  There is an exception to this principle.  The court may decide a claim that is moot where the claim is "'capable of repetition, yet evading review'" and the repetition will affect "the same complaining party."  *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 71 (2d Cir.) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)), *cert. denied sub nom. Debari v. Bedford Cent. Sch. Dist.*, 534 U.S. 837 (2001).

In his motion, the plaintiff states that he has been transferred to another correctional facility, but contends that he could be returned to MacDougall Correctional Institution at any time.  As long as the policy at issue continues to be strictly enforced, the plaintiff would encounter the same

conditions if he returns to MacDougall Correctional Institution. The court considers these claims to be capable of repetition yet evading review.  Thus, the court may consider the complaint with the original request for relief and amendment of the prayer for relief is not required.  Therefore, the plaintiff's motion is being denied as moot.

## V.  Conclusion

The Defendants' Motion for Summary Judgment (Doc. No. 23) is hereby GRANTED as to the Fourteenth Amendment claims and DENIED in all other respects.  The case will proceed to trial on the remaining claims.  The plaintiff's motion to amend relief (Doc. No. 41) is hereby DENIED as moot.

It is so ordered.

Dated this 22nd day of September, 2012, at Hartford, Connecticut.

                                                /s/AWT
                                            Alvin W. Thompson
                                  United States District Judge